## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **HAMEAD JAHER AL-SHEWAILY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-07-946-HE** |
| | ) | |
| **MICHAEL B. MUKASEY,[1]et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, appearing pro se, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241, challenging his continued post-removal order detention by Immigration Customs Enforcement ("ICE") of the Department of Homeland Security ("DHS").[2]  The matter has been referred to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636.  Respondents have filed a response to the petition.[3]  Although Petitioner has not replied to the response, the time for doing so has now passed, and thus, the matter is at issue.  For the following reasons, it is recommended that the petition be denied.

---

[1]On November 9, 2007, Michael B. Mukasey became the Attorney General.  *See* The United States Department of Justice, at www.usdoj.gov (accessed November 19, 2007)  In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Mukasey is substituted for Alberto R. Gonzales as a respondent in this action.

[2]"On March 1, 2003, the Immigration and Naturalization Service ["INS"] ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the Department of Homeland Security."  *United States v. Sandoval*, 390 F.3d 1294, 1296 n. 2 (10th Cir. 2004) (citing Homeland Security Act, Pub.L. [No.] 107-296 Sec. 471, 116 Stat. 2135 (Nov. 25, 2002), 6 U.S.C. § 291).  Although the facts in this case involve the time period before and after the transfer of functions between the INS and the DHS, both parties refer to the relevant immigration agency as the DHS, and that is the reference used for purposes of this Report and Recommendation.

[3]Respondents' response/motion with supporting documents attached has been construed by the Court as an answer in accordance with Rule 5 of the Rules Governing Section 2254 Cases.  *See* Rule 1(b), Rules Governing Section 2254 Cases (rules may be applied to other habeas cases in court's discretion).

Background

Petitioner alleges that he is a native and citizen of Iraq and that he "first arrived in the U.S. as a refugee on April 12, 1996." Petition at 4. Petitioner further alleges that he was originally ordered removed from the United States on June 21, 2001. Respondents have provided documentation showing that at a removal proceeding held June 21, 2001, an immigration judge ("IJ") ordered that Petitioner be removed to Syria, or in the alternative, to Iraq; however, the judge ordered Petitioner's removal to Iraq stayed under the provisions of Article III of the Convention Against Torture ("CAT"). Response, Ex. 1. Although no documentation was provided in support of this assertion, Respondents state that "on December 17, 2001, Petitioner was released on an Order of Supervision after his removal to Syria could not be executed." Response at 2. Response, Ex. 2. Petitioner alleges that he was placed in ICE custody on April 26, 2006, when he completed his criminal sentences.[4] Petition at 3 and 4.

Respondents state, again without supporting documents, that on May 10, 2006, ICE officials moved to reopen Petitioner's immigration proceedings based on "changed circumstances in Iraq," and on May 24, 2006, the motion was granted. Response at 2. On April 19, 2007, an IJ ordered that Petitioner be removed to Iraq and denied

---

[4]Respondents have submitted a Judgment and Sentence showing that on March 22, 2006, Petitioner was convicted pursuant to his plea of guilty to charge of assault and battery with a dangerous weapon in Case No.CF-2004-2871, and received a sentence of two years of imprisonment with credit for time served, to be served concurrently with the sentences in Case Nos. CF-2000-3831 and CF-2002-3573. Response, Ex. 2. Publicly available records of the Oklahoma County District Court show that on the same date, March 22, 2006, Petitioner's suspended sentences for his convictions of assault with a dangerous weapon (Case No. CF-2000-3831) and placing body fluids upon a government employee (Case No. CF-2002-3573) were revoked. *See* The Oklahoma State Courts Network (OSCN), at http://www.oscn.net (docket in *State v. Hemead J. Alshywaily*, Case No. CF-2000-3831) and (docket in *State v. Hamead Alshuwaily*, Case No. CF-2002-3573) (accessed October 4, 2007).

Petitioner's claim for relief under the CAT claim.[5]  Response, Ex. 3.  Petitioner waived appeal of that order, and it became administratively final on that date.  *Id.*  *See* 8 C.F.R. § 3.39; 8 C.F.R. §§ 240.14 and 241.1(b).

In his habeas petition filed on August 23, 2007, Petitioner challenges the failure of ICE to remove him to Iraq or any other country.  He further alleges that Iraq "has not been issuing travel documents for any repatriation of any Iraq citizen."  Petition at 5.  He claims that his detention has extended beyond the time ICE is statutorily authorized to detain him pending removal pursuant to the United States Supreme Court decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001) and that his continued detention violates his Fifth Amendment right to substantive and procedural due process.  Petition at 7-9.

Respondents contend that Petitioner is not entitled to habeas relief because he has failed to establish a *prima facie* claim under *Zadvydas*.  Specifically, Respondents contend Petitioner's detention is presumptively reasonable under *Zadvydas* because at the time Petitioner filed his petition he had been in ICE custody for only four months following the April 19, 2007, order of removal.

DISCUSSION

I.      Jurisdiction

The general habeas corpus statute, 28 U.S.C. § 2241, provides the federal courts with the authority to grant a writ of habeas corpus to a person held "in violation of the Constitution or law and treaties of the United States."  28 U.S.C. § 2241(c)(3).  The statute also grants federal courts jurisdiction to review the lawfulness and constitutionality of

---

[5]According to Respondents, Petitioner's CAT claim was denied by the IJ on the basis of the changed circumstances.  *Id.*

3

executive detention.   The Supreme Court has held that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 687-88, 699 (2001). This Court has subject matter jurisdiction over the instant § 2241 petition because Petitioner was detained within its jurisdiction at the time he filed his petition and he asserts that his detention is not statutorily authorized and violates his constitutional rights. *See Zadvydas*, 533 U.S. at 699. *See also Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (finding district court properly exercised jurisdiction over alien's habeas petition challenging his continued detention without bond or a bond hearing);[6] *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.") (citing *Zadvydas*, 533 U.S. at 687-88).

II.   <u>Application of *Zadvydas v. Davis*</u>

The detention of aliens subject to final orders of removal is governed by 8 U.S.C. § 1231. The statute authorizes a mandatory 90-day detention period following a final order of removal. 8 U.S.C. § 1231(a)(1)(A), (a)(2).[7]  If an alien is not deported during the 90-day removal period, certain classes of aliens, including inadmissable aliens and

---

[6]The undersigned notes that although the Real ID Act of 2005 ("RIDA"), effective May 11, 2005, "eliminate[d] a district court's jurisdiction over habeas petitions challenging final orders of removal . . . the [RIDA] did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention." *Ferry*, 457 F.3d at 1131 (citation omitted).  Here, Petitioner challenges his continued detention, rather the validity of his April 19, 2007, removal order, and thus the Court is fully empowered to consider his claim.

[7]The removal period begins on the latest of the following:
(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
8 U.S.C. § 1231(a)(1)(A), (B).

criminal aliens, may continue to be subject to detention if they have not yet been removed, 8 U.S.C. § 1231(a)(6),[8] or the alien may be released under continued supervision, 8 U.S.C. § 1231(a)(3).

In *Zadvydas*, the Supreme Court recognized the "obvious" and "serious" constitutional problem which would arise out of a statute that "permit[ted] an indefinite, perhaps permanent, deprivation of human liberty without . . . protection." *Zadvydas*, 533 U.S. at 692.  To avoid a constitutional infirmity, the Supreme Court held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.  The Court held that six months is a  "presumptively reasonable period of detention" in which to bring about an alien's removal.  *Id.* at 700-01.  After the six-month period, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . ." at which point "the Government must respond with evidence to rebut that showing." *Zadvydas*, 533 U.S. at 701.[9]

Respondents argue that at the time the petition was filed, Petitioner had  been in post-removal order custody approximately four months – less than the six month

---

[8] Specifically, § 1231(a)(6) states the following:
   An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this  title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

[9]Although neither party has advised the Court whether Petitioner's status prior to removal proceedings was that of an inadmissible alien or a lawfully admitted alien, the Supreme Court has determined that the presumptive six-month period described in *Zadvydas* applies to both categories. *Clark v. Martinez*, 543 U.S. 371, 378-87 (2005) (holding *Zadvydas* applies to all categories of aliens whose detention was authorized by 8 U.S.C. § 1231(a)(6), including "those ordered removed who are inadmissible").

presumptively reasonable period under Zadvydas – and therefore, the petition fails to state a *prima facie* claim for relief. Response at 4. Respondents' premature filing theory is apparently based on the conclusion that calculation of the post-order detention period began on April 19, 2007, the date of the removal order following the reopening of Petitioner's immigration proceedings. As discussed below, even though Respondents have failed to support this calculation with argument or legal analysis, the undersigned finds that the petition has been filed prematurely.

According to the provisions of 8 U.S.C. § 1231(a)(1)(A), (B), the removal period begins on the latest of several events. Therefore, in order to determine whether Petitioner's custody has exceeded the time allowed, the following events specific to Petitioner's removal must be considered. Under the original order of removal dated June 21, 2001, Petitioner was ordered removed to Syria or Iraq although a stay was placed on his removal to Iraq. When removal to Syria could not be accomplished within a reasonable time, Petitioner was released in December 2001 on conditions.[10] He was subsequently convicted of various crimes and was ultimately incarcerated. Following his release from incarceration, he was again placed in ICE custody.[11]

---

[10]The Supreme Court handed down the decision in *Zadvydas* on June 28, 2001, approximately one week after the entry of Petitioner's original order of removal. Although the record does not include documents relating to Petitioner's release order, the timing of his release is consistent with the six-month post-order detention period set forth in *Zadvydas*.

[11]Petitioner's release from incarceration for convictions committed while on release from ICE custody resulted in a new beginning date for the removal period. 8 U.S.C. § 1231(a)(1)(B)(iii). *See Gregory v. B.I.C.E./D.H.S.*, No. 06-4008(SDW), 2007 WL 708856, *2 (D.N.J. March 6,2007) (unpublished decision) ("If-during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien-the alien is subjected to a qualifying superceding event, *e.g.*, the alien released from confinement related to a criminal offense files an application seeking judicial review of the alien's removal order, or if this alien is detained/confined on a new charge or on parole revocation and then re-released, such superceding event starts the alien's removal period anew.). Although the record does not indicate the

(continued...)

Respondents assert and Petitioner does not dispute that on May 24, 2006, the IJ granted the government's motion to reopen Petitioner's immigration proceedings. The United States Supreme Court has said that motions to reopen in immigration proceedings are most analogous to Rule 60(b) motions under the Federal Rules of Civil Procedure. *Stone v. I.N.S.*, 514 U.S. 386, 401 (1995) ("The closest analogy to the INS' discretionary petition for agency reconsideration is the motion for relief from judgment under Rule of Civil Procedure 60(b)."). Therefore, courts have determined that an IJ's decision or granting of a motion to reopen removal proceedings vacates the previous removal order and reinstates the previously terminated immigration proceedings. *See Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004) ("We . . . hold that the grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings."); *DaCosta v. Gonzales*, 449 F.3d 45, 50 (1st Cir. 2006) (noting that granting a motion to reopen "has the legal effect of vacating" a decision ordering voluntary departure); *Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002) ("The BIA's granting of the motion to reopen means there is no longer a final decision to review."). Therefore, Petitioner's removal proceedings were reopened and on April 19, 2007, an order of removal was entered ordering Petitioner's removal to Iraq but denying any relief under CAT. Thus, the *Zadvydas* "presumptively reasonable period" of detention began anew on April 19, 2007, the date of the final order of removal under which Petitioner is currently detained pending his repatriation to Iraq. 8 U.S.C. §

---

[11](...continued)
date of Petitioner's release from incarceration, such date is not determinative here, because as discussed *infra*, yet another date governs the beginning of the relevant Zadvydas six-month period in this case.

1231(a)(1)(B)(i).  Petitioner does not deny that at the time he filed his habeas petition he had not been in post-removal custody for less than six months after the April 19, 2007, removal order.   Thus, Petitioner's habeas petition seeking relief under *Zadvydas* is premature and fails to state a *prima facie* claim for habeas relief.   *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (finding that the "six-month period thus must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under *Zadvydas*"); *Fahim v. Ashcroft*, 227 F.Supp.2d 1359, 1366 (N.D. Ga. 2002) (finding Egyptian national failed to establish custodial period of time following order of removal in excess of six months, at the time he filed his petition); *Nuculovic v. Chertoff*, No. 1:CV-07-0703, 2007 WL 1650613 (M.D. Pa. June 5, 2007) (unpublished decision) (dismissing under Rule 4 alien's § 2241 petition challenging his post-removal detention, filed before the expiration of the presumptively reasonable six-month period); *Morena v. Gonzales*, No. 4:CV-05-0895, 2005 WL 3277995, at *5-6 (M.D. Pa. 2005) (unpublished decision) (finding that "since Petitioner's six-month presumptive detention period has not yet expired in this case, he has not stated a claim under *Zadvydas*"); *Okpoju v. Ridge*, No. 03-11145, 2004 WL 2943629, at *1 (5th Cir. Dec. 20, 2004) (unpublished decision) (six-month period must have expired at the time habeas petition is filed).

Even if Petitioner had waited to file the instant petition until after the six-month period had expired, he would not be entitled to habeas relief because he has not alleged or demonstrated sufficient evidence to establish "that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Petitioner has failed to present any facts indicating that ICE is incapable of executing his removal

to Iraq and that his detention will, therefore, be of an indefinite nature.  To carry this burden, an alien subject to an order of removal must present something beyond "speculation and conjecture." *Idowu v. Ridge*, No. 3:03-CV-1293-R, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003) (unpublished).  A petitioner must demonstrate the existence of either institutional barriers to repatriation to the country in question or barriers peculiar to the individual in question such that there is no significant likelihood of removal in the reasonably foreseeable future. *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1136-37 (S.D. Cal. 2001).

Although Petitioner claims that "Iraq has not been issuing travel documents for any repatriation of any Iraq citizen," Petition at 5, he fails to support such claim with any evidence and fails to allege any political barrier to the repatriation of aliens to Iraq.[12]  In addition, Petitioner has alleged no particular barriers that would prevent his removal to Iraq.  Even assuming a lack of visible progress in the issuance of travel documents from Iraq authorities, such does not in and of itself meet Petitioner's burden of showing that there is no significant likelihood of removal. *See Fahim v. Ashcroft*, 227 F.Supp.2d 1359, 1366 (N.D. Ga. 2002) (mere fact that Egyptian government has taken its time in responding to  immigration officials' request for travel documents does not mean that it will not do so in the future).

---

[12]Nothing in the record indicates that Petitioner's situation is similar to that of Kim Ho Ma and Kestutis Zadvydas, the aliens whose cases were considered in *Zadvydas*.  Ma was from Cambodia, a country with which the United States has no repatriation agreement.  As a result there was virtually no hope of repatriating Ma back to his native land. *Zadvydas,* 533 U.S. at 686.  Likewise Zadvydas, having been born in a refugee camp, was literally a man without a country and, therefore, was an individual whom no other nation would ever accept, no matter the efforts of immigration officials.  *Zadvydas*, 533 U.S. at 684.

In sum, Petitioner has failed to state a claim that his detention by ICE officials pending his removal to Iraq is a violation of ICE's statutory authority pursuant to *Zadvydas*. Petitioner's statutory claim should be denied.[13]

III.   Due Process Claims

Petitioner also alleges that his continued detention violates his Fifth Amendment right to substantive due process by depriving him of his liberty interest in freedom from bodily restraint. Petition at 7. The response does not address Petitioner's due process claims.

As discussed previously, Petitioner has not demonstrated that his detention has exceeded ICE's statutory authority to detain him. Without establishing such a violation, Petitioner cannot bring a substantive due process claim based upon his continued detention. *See Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("pursuant to *Zadvydas*, [the petitioner's] due process rights are not jeopardized by his continued detention so long as his removal remains reasonably foreseeable"); *Andrade v. Gonzales*, 459 F.3d 538, 543-44 (5th Cir. 2006) (rejecting an alien's constitutional claim based on his failure to show that removal was unlikely); *Idowu v. Ridge*, No. 3-03-CV-1293-R, 2003

---

[13]If Petitioner continues to be held in detention by ICE, he may reassert a *Zadvydas* claim in a different § 2241 petition if he presents more than an unsupported conclusion that his removal is not foreseeable. *See, e.g., Ali v. Barlow*, 446 F.Supp.2d 604, 609-11 (E.D. Va. 2006) (finding alien's habeas petition filed after three months of post-removal detention premature; even assuming ripeness, alien failed to show no significant likelihood of removal in the foreseeable future); *Joseph v. Chertoff*, No. 06-0520, 2006 WL 1722593, at *4 (D.N.J. June 19, 2006) (unpublished decision) (noting that after the expiration of petitioner's six-month presumptively reasonable post-removal detention period, "[p]etitioner is free to file another § 2241 petition should . . . [he] develop [a] good evidence-based reason to believe that his removal is no longer reasonably foreseeable"); *Keomanivong v. Bureau of Immigration and Customs Enforcement*, No. 3:04CV00142 (RNC), 2004 WL 813021, *1 (D.Conn. April 5, 2004) (unpublished decision) (dismissing without prejudice to filing of a habeas petition if alien is held beyond the time period set forth in *Zadvydas* when alien attempted to challenge an order of removal on the ground that Laos was not accepting deportees).

WL 21805198, at *5 (N.D. Tex. Aug. 4, 2003) (unpublished decision) (same).   Thus, Petitioner's substantive due process claim fails.

With respect to his procedural due process claim, the typed petition alleges that Petitioner has been denied "a timely and meaningful opportunity to demonstrate that s/he should be not be detained."   Petition at 8.   "[W]hen facing deportation . . . aliens are entitled to procedural due process, which provides an opportunity to be heard at a meaningful time and in a meaningful manner." *Cruz v. Maurer*, 483 F.3d 1013, 1020 (10th Cir. 2007) (citation omitted).   Here, Petitioner fails to elaborate on the details of any procedural due process claim; rather, he appears to base such claim on an entitlement to release pursuant to *Zadvydas*, which has already been rejected in addressing his statutory claim.   Petition at 9.   Further, Petitioner appears to concede that on July 27, 2007, his custody status was reviewed by immigration officials and that he received a written decision ordering his continued detention.   Petition at 5.   He further advises that ICE authorities have informed him that on October 17, 2007, his case will be transferred to ICE's Headquarter Post-Order Detention Unit (HQPDU) for custody status review.   *See e.g.*, 8 C.F.R. § 241.13(b)(2)(ii).   Accordingly, the undersigned finds that Petitioner's allegations do not reflect a deprivation of procedural due process, and he is not entitled to habeas relief on this claim.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be denied.   Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by

the 10th day of December, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1(a).  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  *Moore v. United States,* 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of the issues referred to the Magistrate Judge in this matter.

ENTERED this 20th day of November, 2007.


BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE

12